WARDEN, Appellant, vs. MILLER and another, Respondents.

*October 18 — November 5, 1901.*

*Negligence: Fire spreading to land of another: Court and jury: Instructions: Ordinary care.*

1. On a day without wind defendants set fire to the weeds growing on their marsh land, after having equipped themselves with wet carpets to prevent the fire spreading beyond their own forty-acre tract. A wind unexpectedly arose and, in spite of their utmost exertions, caused the fire to run over the adjoining lands of plaintiff. *Held,* that the question whether they exercised ordinary care was one for the jury.

2. An instruction that from certain facts the jury might infer negligence was properly refused, where there were circumstances, not mentioned in the instruction, tending to rebut such inference.

3. It was not error to refuse an instruction that it was defendant's duty to exercise such care as the great mass of mankind would exercise " under the same or similar circumstances," where the court instructed that the care required was such as the great majority of mankind would and do exercise " under like circumstances."

4. In determining whether a person whose acts caused injury to another was guilty of negligence, the test is not whether injury from such acts was probable, but whether injury might have been expected by a person of ordinary care under like circumstances, including the precautions taken to avert such an injury.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

The defendants were sued upon a charge that they negligently started a fire, and wrongfully and negligently suffered said fire to run and spread on certain described lands of the plaintiff, to his damage. It appeared that on November 6, 1899, a fire was started by the defendant *Imler* upon a certain marsh forty occupied by the two defendants, which had not been mowed the previous year; that it was a dry time; that said fire got beyond the control of the defendants, although they had made some preparation to prevent that event by equipping themselves with wet carpets, etc.; and that, although they made exertion to prevent its escape, it ran northward onto and across a marsh forty belonging to the plaintiff, and destroyed a considerable quantity of small poplar trees and some willows of larger size growing thereon. A special verdict was taken, in which it was found that the fire was set by defendant *Imler*, and not by the two defendants jointly; that it was not negligently set, and that it was not negligently suffered to escape onto the plaintiff's land; that it did not injure the plaintiff's land; and that his damages were "blank dollars." Motion to set aside several answers was overruled, as also one for a new trial, and judgment was entered in favor of the defendants, from which the plaintiff appeals.

For the appellant there was a brief by *Sawyer & Sawyer*, and oral argument by *H. W. Sawyer* and *E. W. Sawyer*. They contended, *inter alia*, that the claim that the wind changed or came up after the fire was set is no defense, because a person of ordinary prudence will anticipate such changes as likely to occur. *Northern Pacific R. Co. v. Lewis*, 51 Fed. Rep. 658; *Gram v. N. P. R. Co.* 1 N. Dak. 252. The spreading of fire once set, especially in the open country, is natural and reasonably to be expected. *Tyler v. Ricamore*, 87 Va. 466. Before the fire could have burned what defendant in-

tended it to burn it naturally would have extended so as to have a frontage across the entire forty, and yet, appreciating that it might get away from her, instead of mowing or plowing a space to act as a barrier, she took a few small pieces of carpet such as an old lady could carry eighty rods, and neither took men along to do the work and help control the fire nor gave notice to any one of her intention to set it. Such conduct was negligence as matter of law. Shearman & Redf. Negligence, § 669; Cooley, Torts, 700; *Selleck v. L. S. & M. S. R. Co.* 93 Mich. 375; *Salisbury v. Herchenroder,* 106 Mass. 458; *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333; *Louisville, N. A. & C. R. Co. v. Nitsche,* 126 Ind. 229, and cases cited; Broom, Legal Maxims, 383; *Vaughan v. Menlove,* 3 Bing. N. C. 468; *Tuberville v. Stampe,* Ld. Raym. 264, 1 Salk. 13; *Jones v. Festiniog R. Co.* L. R. 3 Q. B. 733. It was negligence on the part of the defendants to fail to give plaintiff notice, that he might protect his property. *Bachelder v. Heagan,* 18 Me. 32; *Hewey v. Nourse,* 54 Me. 258; *Tourtellot v. Rosebrook,* 1 Met. 460; *Bennett v. Scutt,* 18 Barb. 348.

*J. E. Malone* and *M. L. Lueck,* for the respondents.

Dodge, J. From among the very numerous assignments of error alleged by appellant those which assault the correctness of the jury's finding that the fire in question was neither negligently set nor negligently allowed to escape onto the plaintiff's premises are most vigorously argued and most radical in reaching a conclusion upon the whole case. The assault on these findings is both upon the ground that they have no support in the evidence and that they were induced by errors of the court in giving certain instructions and in refusing certain others requested by the appellant.

It seems hardly necessary at this late day to reiterate the rule that a jury's conclusion, especially upon such a question as negligence, cannot be disturbed by this court if there be any credible evidence, which, in its most favorable view,

to any reasonable mind, can support the conclusion reached. A conclusion of negligence, of course, involves a comparison of the conduct under consideration with the conduct of the great mass of mankind under like circumstances. This standard must rest in the experience and observation of the individual or individuals who are to make the comparison, and in the ordinary affairs of life it is beyond question that men selected from the various professions and employments of life to sit upon juries are quite as able to correctly form and apply that standard as are men whose experience is confined to a single profession. The standard of ordinary care exercised by farmers in the necessary act of burning the refuse from marsh lands in a particular part of the state is, of course, far better known to a jury of the vicinage than it can be to us. If, therefore, there is any credible evidence of any precautions against injury resulting from the doing of such acts, it is peculiarly appropriate that we should refrain from setting aside the conclusion of such a jury that such acts do or that they do not coincide with the care ordinarily exercised. After a careful examination of the evidence, we think it plain that there was evidence bearing upon the situation and conduct of the defendants proper to be submitted to the jury in this case, and from which they might have drawn the inference of due care, although they might equally, so far as a court can say, have reached a conclusion of negligence. To detail a few of these circumstances: There was an extended marsh, over-grown with weeds, the burning of which was apparently necessary to render it productive the ensuing year. There is evidence that the day selected was entirely without wind, so that the restraint of the fire within desired bounds would be comparatively easy. There is conflict of evidence as to whether any unusual condition of drouth existed, so as to render the escape of the fire unusually perilous. The defendants equipped themselves with wet carpets to an extent

which they thought would enable them to control the fire within desired limits. The ultimate escape of the fire, they testified, was due to an unforeseen and unexpected change and increase in the wind, so that it blew almost directly towards the only unprotected direction, and when that predicament arose they exerted themselves to the utmost, and did everything in their power to prevent the spread of the fire toward the plaintiff's premises. Whether or not these precautions constituted due care, as measured by the usual conduct of ordinarily careful people in like situations and under like circumstances, was a question which we are satisfied might have been resolved either way, and the answer to which by the jury should not be disturbed unless induced by incorrect instruction or erroneous omission to instruct as to the law.

The plaintiff requested an instruction to the effect that "the inflammable material, . . . the direction and force of the wind, the drouth and dry condition, . . . the absence of fire barriers, . . . and the general level condition of the country" were facts from which the jury might infer negligence, if, from the evidence, they "find such to be the facts." This instruction was refused, but one was given informing the jury that they might take into consideration such facts if found to exist. In this no error as against appellant was committed. It is a very dangerous practice for a court to attempt a recitation of the facts which may or may not justify an inference such as negligence. It is extremely liable to mislead the jury. Doubtless some of these individual circumstances, if standing entirely alone, or accompanied by certain conduct, might justify the inference of negligence, but such an instruction as this might lead the jury to ignore every other circumstance not mentioned in the instruction, of which, as already pointed out, there were several. The true rule is that from all of the circumstances the jury might infer

negligence, or they might infer due care; and we think the
court performed its whole duty to the appellant in that he
did detail to the jury, as worthy of consideration, the very
circumstances suggested by the appellant's request; our only
doubt being whether such instruction was fair to the de-
fendants without commenting upon the other facts which
tended more strongly to rebut the inference of negligence.
It is by no means true that those facts which a court of last
resort may properly declare to support an inference of neg-
ligence should be stated to the jury as having that effect;
certainly not unless they are accompanied by all the other
facts and circumstances in the case. *Benjamin v. Covert*,
55 Wis. 157, 159; *Kuenster v. Woodhouse*, 101 Wis. 216, 221.

Appellant, with reference to question 6,— whether the
fire was negligently allowed to escape,— requested an in-
struction to the effect that it was the duty of the defend-
ants to exercise such care as the great mass of mankind
would exercise under the same or similar circumstances.
The specific request was refused, but the court gave to the
jury the instruction that ordinary negligence is the want of
ordinary care; that is, want of such care as the great major-
ity of mankind would and do exercise in the transactions of
human life under the like conditions and circumstances.
Doubtless the instruction requested was a correct statement
of the rule of law, but its refusal can constitute no prejudi-
cial error if that rule of law was elsewhere correctly given
by the court. The criticism made upon the instruction which
was given is that the court used the expression "under like
circumstances," instead of that requested, "under the same
or similar circumstances." This difference constitutes no
legal distinction. Counsel cites us to various cases in which
it has been said that an instruction is incorrect which does
not direct the jury to adopt as a standard the care ordi-
narily exercised "under the same or similar circumstances;"
but there might be cited an almost equal number in this

court where the phrase " under like circumstances " is used. *Jung v. Stevens Point,* 74 Wis. 547, 553; *Innes v. Milwaukee,* 96 Wis. 170, 175; *Collins v. Janesville,* 107 Wis. 436, 440; *Dehsoy v. Milwaukee E. R. & L. Co.* 110 Wis. 412. Indeed, the two phrases are fairly interchangeable. If either can be said to be the more accurate, it is that which calls merely for similarity; for it is safe to say that no two events ever occurred under precisely identical circumstances. If the jury is instructed that the circumstances which they are to adopt as a standard for comparison must be like those which are on trial, they cannot be misled as to their duty in that respect.

Appellant also assigns error upon refusal of the following instruction: " If you find that the defendants, or either of them, set said fire under such conditions, or at such time, or in such manner as to make injury to the property of others probable, you should answer question five ' Yes.' " That is neither a correct rule nor a safe statement to a jury. The word "probable" is too indefinite. Many acts — indeed, many kinds of regular business — are accompanied by probability of injury to others in some degree, and yet they do not constitute negligence in and of themselves. Of course, as the probability of injury is greater, the measure of precaution and care increases; but, if the care exercised comes up to the standard of ordinary care,— such care as is ordinarily exercised by the great mass of mankind under such circumstances of imminent peril,— there is no negligence. The test to be applied is not whether injury is probable, but whether injury might have been expected by a person of ordinary care under like circumstances, including in such circumstances the precautions in fact taken to avert such injury.

Some other criticisms are made of the instructions given on the subject of negligence, but they are not of sufficient gravity to warrant discussion. Suffice it to say that they present no reversible error.

Having thus reached the conclusion that the finding of the jury that defendants were guilty of no negligence has support in the evidence, and that no error was committed in the manner of submitting that subject to them, the judgment in favor of defendants results necessarily, and it is immaterial whether any error was committed upon other issues. We therefore refrain from consideration of appellant's assignments of such errors.

*By the Court.*— Judgment affirmed.