ZEILER, Respondent, vs. ZEILER and another, Appellants.
HAMM, Respondent, vs. SAME, Appellants.
WESLEY, Respondent, vs. SAME, Appellants.

*October 11, 1937—January 11, 1938.*

For the appellants there were briefs by *Harry V. Meissner,* and oral argument by *Mr. Meissner* and *Mr. Robert L. Piper,* both of Milwaukee.

*James R. Durfee* of Antigo, for the respondents Emma Hamm and Bert Wesley, and *Gustav Winter* of Antigo, for the respondent Vera Zeiler, and *Richmond, Jackman, Wilkie & Toebaas* of Madison, of counsel on the respondents' brief in support of motion for rehearing.

The following opinion was filed November 9, 1937:

WICKHEM, J.   For the most part the facts are not in dispute.   On August 4, 1935, at 6:30 p. m., the Paugel car, a 1928 Chevrolet coach, was being driven by defendant Paugel in a southerly direction on Highway No. 45.   In that car were Mrs. Hamm, Clarence Hamm, William Hamm, Emil Klabunda, and the defendant Paugel.   The accident happened upon a straight eighteen-foot concrete highway, at a point between two small knolls approximately one thousand

six hundred feet apart, alongside of a golf course. The low point between the knolls is approximately seven hundred feet from the north knoll and nine hundred feet from the south knoll. There is a clear view from either knoll for one thousand six hundred feet. The collision occurred at the low point above indicated. Paugel had been driving on his own side of the highway until he arrived at the north knoll. There is evidence that he thereafter for a distance of two to three hundred feet drove with two or three feet of his car over the black line. There is a conflict in the evidence as to whether he had completely returned to his own side of the road before the collision, but it is established that he either had completely or nearly done so. He testified that his brakes would not hold, and that when the traffic ahead of him slowed because one of the cars was turning into the golf course, he was compelled to choose between hitting a Chevrolet truck immediately in front of him or turning to the left to avoid it. He did turn to the left and almost instantly came into collision with the car driven in a northerly direction by Zeiler, and in which were riding plaintiffs Vera Zeiler and Bert Wesley. Zeiler was concededly driving on his own side of the highway, and no complaint is made of that portion of the verdict which exonerates him from negligence with respect to speed and control. Hence, the question is a very narrow one, Does the evidence sustain the jury's finding that Zeiler was guilty of negligent lookout, and, if so, does the finding that this negligence was a cause of the collision find any support in the record?

If Paugel had returned completely to his proper side of the highway and then found, due to a slowing up of traffic, that he could not stop his car, and suddenly determined to invade the left side of the road, it is perfectly clear that no amount of care on the part of Zeiler could possibly have averted this collision. All the evidence is to the effect that

upon Paugel's invasion of the left side of the highway the collision occurred almost immediately. Plaintiffs virtually admit in their brief that, if those were the facts, there could be no recovery. Plaintiffs rely, however, on evidence to the effect that for some hundreds of feet after the Paugel car got to the top of the north knoll it was on the wrong side of the road and Zeiler did not see it; that Paugel never did completely return to his own side of the road, and that in attempting to do so he struck the Chevrolet truck, and this threw his car into Zeiler's path. It is difficult to suppose that Zeiler, who was concededly keeping his car in a straight line on his own side of the road, could have failed to see Paugel if he had been on the wrong side of the road to any considerable extent. However, he testifies that the first he saw of the Paugel car was when it came over into his side of the road immediately before the collision, and, in view of our conclusions as to cause, we shall assume that there was an issue as to negligent failure to keep a proper lookout.

We conclude that there is no evidence that negligent lookout on Zeiler's part was a proximate cause of the collision. Assuming that Paugel had been driving about two or three feet over the black line, it is evident that he attempted to return to his own side of the road, and that he completely or nearly succeeded in the attempt. What caused the accident was the failure of Paugel's brakes and his sudden and substantial invasion of Zeiler's portion of the highway at a time so shortly before the impact that nothing could have been done by Zeiler to avoid the collision. Zeiler was exonerated from every charge of negligence except with respect to lookout. We find it impossible to conclude that failure to observe that Paugel had been driving partly over the black line was a cause of the collision. We consider the case to be governed by principles stated in *Watkins v. Watkins,* 210 Wis. 606, 245 N. W. 695. This compels a reversal of the

judgments, and makes it unnecessary to consider other assignments of error.

*By the Court.*—Judgments reversed, and causes remanded with directions to enter judgments dismissing the complaints as to defendants Harold Zeiler and Bankers Indemnity Insurance Company.

A motion for a rehearing was denied, with $25 costs in one case, on January 11, 1938.